UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KEVIN DOOLEY,                                          :

              Plaintiff,                :          <u>MEMORANDUM ORDER</u>

   -v.-                                               :

UNITED STATES OF AMERICA,                 :          18 Civ. 7136 (GWG)

             Defendant.               :
----------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Kevin Dooley brings a claim against the United States of America under the
Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671 <u>et</u> <u>seq.</u>, to recover damages in
connection with a May 18, 2017, collision between Dooley, who was on an electric bicycle, and
a vehicle owned by the United States Marine Corps and operated by Marine Gunnery Sergeant
Luis Manuel Disla.  <u>See</u> Complaint ¶¶ 1, 9, filed Aug. 10, 2018 (Docket # 11) ("Comp.");
Plaintiff's Proposed Findings of Fact and Conclusions of Law, filed August 2, 2021 (Docket
# 72) ("Pl.'s Proposed Findings"), at 1; Defendant's Proposed Findings of Fact and Conclusions
of Law, filed July 30, 2021 (Docket # 69) ("Def.'s Proposed Findings"), at 1.  The Court has
scheduled a bench trial in this case for January 24, 2022.  <u>See</u> Minute Entry of August 30, 2021.
Dooley has moved in limine to exclude various categories of evidence.[1]

   "The purpose of an in limine motion is to aid the trial process by enabling the Court to
rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are
definitely set for trial, without lengthy argument at, or interruption of, the trial."  <u>Palmieri v.</u>

---

[1]  <u>See</u> Plaintiff's First Pretrial Memorandum, filed Aug. 16, 2021 (Docket # 79) ("Pl. Mem.");
Plaintiff's Second Pretrial Memorandum, filed Aug. 17, 2021 (Docket # 80) ("Pl. Second
Mem."); Defendant's Memorandum of Law in Opposition, filed Sept. 15, 2021 (Docket # 83)
("Def. Mem."); Declaration of Danielle J. Levine in Opposition, filed Sept. 15, 2021 (Docket
# 84) ("Levine Decl.").

Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (citation and internal quotation marks omitted).  A trial court will exclude evidence on a motion in limine "only when the evidence is clearly inadmissible on all potential grounds."  United States v. Ozsusamlar, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006).  Nonetheless, a court's ruling on a motion in limine may be "subject to change when the case unfolds . . . because the actual evidence changes from that proffered by the movant."  Wilder v. World of Boxing LLC, 220 F. Supp. 3d 473, 479 (S.D.N.Y. 2016) (alteration in original) (citations and internal quotation marks omitted).

We rule on each motion as set forth below.

A. Government Expert David Bizzak

1. Admissibility of Bizzak's Testimony Generally

Bizzak is an accident reconstruction expert who has proffered an expert report opining on the circumstances of the accident.  See Pl. Mem. at 18.  Dooley objects that Bizzak's testimony is inadmissible because it would not be helpful to the Court under Fed. R. Civ. P. 702(a).  See Pl. Mem. at 19.  However, "[n]umerous courts have held that opinion testimony of accident reconstruction experts are beyond the ken of the average layperson and are therefore helpful to the [factfinder]."  Haines v. Webb, 2014 WL 12828962, at *10 (N.D. Ga. Sept. 26, 2014) (collecting cases).  The Court too believes that its factfinding process would benefit from Bizzak's expertise because accident reconstruction is not a field in which the Court is itself capable of analyzing technical issues "intelligently and to the best possible degree . . . without enlightenment from those having a specialized understanding."  Fed. R. Evid. 702, Advisory Committee Notes (citation and internal quotation marks omitted).

Dooley seeks to exclude Bizzak's testimony also on the grounds that it would be based on "conjecture" rather than "facts and data."  Pl. Mem. at 19, 23.  But Dooley's challenge does

not attack the reliability of Bizzak's accident reconstruction methodology under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993) — nor do we believe such a challenge would be appropriate in light of Bizzak's uncontested qualifications and the plethora of cases rejecting Daubert objections to accident reconstruction experts.  See, e.g., In re: Gen. Motors LLC Ignition Switch Litig., 2015 WL 9480448, at *2-3 (S.D.N.Y. Dec. 29, 2015); Boykin v. W. Express, Inc., 2015 WL 539423, at *8 (S.D.N.Y. Feb. 6, 2015); Haines, 2014 WL 1282896, at *11-13.  Rather, Dooley bases his attack on his contention that Bizzak's opinion that Disla's door was unlatched but not ajar when Dooley collided with the vehicle is contrary to eyewitness testimony.  See Pl. Mem. at 20, 23.  Although expert testimony may not be "speculative" or "conjectural," or based on assumptions "so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison," Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996) (internal citations quotation marks omitted); accord BPP Wealth, Inc. v. Weiser Cap. Mgmt., LLC, 623 F. App'x 7, 10 (2d Cir. 2015) (summary order), "[e]xpert testimony is not inadmissible simply because it contradicts eyewitness testimony."  Greenwell v. Boatwright, 184 F.3d 492, 497 (6th Cir. 1999).  Greenwell held that exclusion is proper where the movant "present[s] facts that plainly contradict the physical evidence upon which the expert based his theory of the accident."  Id. at 498.  Here, however, the "facts" offered by Dooley to contradict Disla's testimony are the recollections of eyewitnesses, including Disla.  See Pl. Mem. at 21-23. But Disla is equivocal on the issue of the position of the door.  See Pl. Second Mem., Ex. 7 ¶¶ 3-4; Levine Decl., Ex. 1, at 13-14, 20.  In any event, we do not accept that witness recollections necessarily constitute the sort of "facts" that would require us to reject Bizzak's opinion, especially since Dooley has not challenged the nature or accuracy Bizzak's characterizations of the physical evidence on which he relied, see Greenwell, 184 F.3d at 497-98.

    2.  <u>Expert Testimony on Legal Conclusions</u>

Dooley argues that Bizzak should be prohibited from testifying that Dooley's actions were the "proximate cause" of the accident.  <u>See</u> Pl. Mem. at 20-21.  Case low holds that an expert witness may not testify to a "legal conclusion."  <u>See</u> <u>Hygh v. Jacobs</u>, 961 F.2d 359, 363 (2d Cir. 1992) (collecting cases).  Thus, courts have held that experts in personal injury cases may not testify that an act or omission was the "proximate cause" of an injury.  <u>See</u>, <u>e.g.</u>, <u>Manzone v. Wal-Mart Stores, Inc.</u>, 2020 WL 5411483, at *5 (E.D.N.Y. Sept. 9, 2020); <u>Sacco v. DaimlerChrysler Corp.</u>, 2008 WL 2816840, at *6, *6 n.3 (N.D.N.Y. Jan. 7, 2008).  Accordingly, Bizzak may not testify as to the "proximate cause" of the accident.  That being said, he will be permitted to opine as to the "cause" of the accident as that term is understood either within his profession or as a matter of ordinary usage.

    3.  <u>Testimony on Bizzak's Second Report</u>

Dooley asserts that we should preclude Bizzak from testifying based on his second report because it was untimely served.  <u>See</u> Pl. Mem. at 24-28.  The parties dispute whether certain photographs supplied by the plaintiff subsequent to Bizzak's first report provided a basis for altering the conclusion of that report.  <u>See</u> <u>id.</u> at 26-27; Def. Mem. at 10.  They also dispute whether the supplemental report was timely under Rule 26(e)(1)(A)(2).  <u>See</u> Pl. Mem. at 25-27; Def. Mem. at 10.  We elect not to reach these arguments because even if we agreed with plaintiff, we would find that preclusion is inappropriate under <u>Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.</u>, 118 F.3d 955, 961 (2d Cir. 1997)  Bizzak provides a reasonable explanation for why the supplemental report was issued, the evidence is important to the Government's case, there is no prejudice to plaintiff given that he has always been (and still

is) welcome to seek an additional deposition of Bizzak as to the opinion expressed in the supplemental report prior to trial if he wishes, and there is no need for a continuance.  See id.

    B.  <u>Surveillance Videos</u>

Dooley argues that surveillance videos taken by a Government investigator must be excluded under Fed. R. Civ. P. 37(c) because the Government failed to produce them until after the October 12, 2020 deadline for discovery, because the Government "did not state their initial [discovery] response was incomplete or incorrect," and because the evidence is "prejudicial to [Dooley's] prosecution of his case."  Pl. Mem. at 30, 32.[2]  The videos, however, were not created until after the discovery period closed and it would have been impossible for the Government to state that its initial response to plaintiff's document requests was incomplete or to produce the videos prior to the close of discovery.  See Def. Mem. at 12-13.  The federal discovery rules require production, not prescience.  The Government's only obligation was to supplement the production "in a timely manner" once the videos came into existence.  Fed. R. Civ. P. 26(e)(1); <u>see generally</u> <u>Responsive Innovations, LLC v. Hotlzbrinck Publishers, LLC</u>, 2014 WL 1237737, *2 (N.D. Ohio Mar. 25, 2014) ("the duty to supplement does not expire at the close of discovery").  Here, the Government provided the videos to Dooley on June 28, 2021 — 34 days after the first videos were taken and 12 days after the final videos were taken.  See Def. Mem. at 12-13.  Given that the videos were taken over four years after the collision, we cannot endorse Dooley's position that a delay of two to five weeks created any prejudice whatsoever, let alone prejudice that should render the Government's June 28 disclosure untimely.  See Pl. Mem. at 33-34.  Certainly, the Government had good reason to wait until it completed filming the videos

---

[2]  Dooley also vaguely objects to the "unauthenticated nature of the video[s.]"  Pl. Mem. at 34. Dooley is free to raise any argument of this kind when the Government offers the videos into evidence at trial.

before turning them over as Dooley might have behaved differently had he known he was being videotaped in a particular period.  To the extent Dooley suggests that the Government was obligated to film the videos during the discovery period and not later, Pl. Mem. at 32-33, we reject the assertion as it is unsupported by citation to any rule governing discovery.  We also note that in the absence of an actual discovery violation, "surprise," Pl. Mem. at 33, is not a basis for excluding evidence.  See Fed. R. Evid. 403, 1972 Advisory Committee Notes ("The rule does not enumerate surprise as a ground for exclusion").

       C.  Dooley's Criminal History

Dooley seeks to exclude evidence of his criminal history.  See Pl. Mem. at 39-40. Because the Government asserts that it "does not intend to introduce any evidence about [Dooley's] arrests or convictions at trial," Def. Mem. at 18, and has not otherwise opposed the motion, this request is granted.

       D.  Dooley's Medical History & Substance Use

Dooley seeks to exclude evidence of certain medical diagnoses, as well as evidence relating to his prior use of narcotics and alcohol.  See Pl. Mem. at 35-45.  We address each in turn.

       1.  Prior Medical History

Dooley moves to exclude various aspects of plaintiff's medical history as irrelevant.  See Pl. Mem. at 36-37.  This Court will not make a blanket ruling excluding plaintiff's medical history as these conditions may bear on the cause of his functional limitations.  The weight to be given any evidence on this score is for the factfinder to decide in light of the significance afforded to the history by a medical expert or other competent witness.

2.  <u>Narcotics Use</u>

Dooley seeks to exclude evidence of his prior use of narcotics.  <u>See</u> Pl. Mem. at 36, 42, 44-45.  Medical records indicate that Dooley has used cocaine in the past, <u>see</u> Pl. Second Mem., Ex. 15 at 1, and Dooley testified in his deposition to using marijuana "[t]wo or three times a week" "in the months preceding the accident," <u>id.</u>, Ex. 1 at 156:6-12.  Dooley insists, however, that "[t]here is not a hint of evidence of [Dooley] having used any drugs including marijuana, at the time of the accident."  Pl. Mem. at 44.  Because the Government does not contend in its opposition or elsewhere that Dooley was under the influence of cocaine on the day in question, we grant Dooley's motion with respect to his previous cocaine use.

Regarding his past marijuana use, however, we overrule Dooley's objection.  Fed. R. Evid. 406 provides that "[e]vidence of a person's habit . . . may be admitted to prove that on a particular occasion the person . . . acted in accordance with the habit."  Courts have held that "before a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature."  <u>Zubulake v. UBS Warburg LLC</u>, 382 F. Supp. 2d 536, 542 (S.D.N.Y. 2005) (internal quotation omitted).  "It is only when the examples offered to establish such a pattern of conduct or habit are sufficiently numerous to permit the inference of systematic conduct, that such examples are admissible."  <u>Loussier v. Universal Music Grp.</u>, 2005 WL 5644420, at *2 (S.D.N.Y. Aug. 30, 2005).  Under Rule 406, we consider "the adequacy of sampling and the uniformity of response," <u>United States v. Newman</u>, 982 F.2d 665, 668 (1st Cir. 1992), which requires "comparison of the number of instances in which any such conduct occurs with the number in which no such conduct took place," <u>Wilson v. Volkswagen of Am., Inc.</u>, 561 F.2d 494, 511 (4th Cir. 1977).

Here, the Government intends to offer testimony from Dooley's "long-time partner" that Dooley used marijuana "every day." Def. Mem. at 22.  When a party's intoxication is at issue, evidence of regular alcohol or drug use is admissible under Rule 406.  See Waller v. Massey-Ferguson, Inc., 1995 WL 534882, at *2-4 (5th Cir. 1995) ("history of using a significant amount of pain medication" admissible); Loughan v. Firestone Tire & Rubber Co., 749 F.2d 1519, 1523 (11th Cir. 1985) (evidence that plaintiff "routinely carried a cooler of beer on his truck and . . . was in the habit of drinking on the job" admissible).  Of course, the offering party must establish that the alcohol or drug use is sufficiently regular "to achieve the status of habit."  Fed. R. Evid. 406, 1972 Advisory Committee Notes.  Given that the Government proffers that it will offer evidence showing that Dooley used marijuana "every day" for a multi-year period before the May 18, 2017 collision, that testimony will be sufficient to show the regularity of habit and the likelihood that it took place on the day of the accident.  Obviously, plaintiff will be free to rebut that inference that evidence if he is able to offer testimony to the contrary.

       3.  Alcohol Use

Dooley seeks to exclude evidence of his "prior use" of alcohol.  See Pl. Mem. at 42-44. The phrase "prior use" is susceptible to various meanings.  If what Dooley means is his use of alcohol prior to the day of the accident, or his habit of consuming alcohol, the Government makes no argument that it intends to offer such evidence.  See Def. Mem. at 19.  Thus, the motion to bar testimony as to Dooley's alcohol use generally or in the past is granted.

If, however, what Dooley seeks to preclude is evidence that he consumed alcohol on the day of the accident and was under its influence at the time of the accident, that motion is denied. It is settled that a lay witness can offer an opinion as to a person's intoxication.  See, e.g., Xiaolu Peter Yu v. Vassar Coll., 97 F. Supp. 3d 448, 470 (S.D.N.Y. 2015) ("In a judicial proceeding

8

under the Federal Rules of Evidence, there is near universal agreement that lay opinion testimony about whether someone was intoxicated is admissible" (alteration, internal citation, and quotation marks omitted)).  If credited, such evidence would allow the factfinder to conclude that the collision was at least partly caused by Dooley's negligence, which could impact the Court's proximate cause analysis, see, e.g., Saldana v. Guzman, 2012 WL 669535, at *4-5 (N.Y. Sup. Ct. Feb. 29, 2012), or reduce Dooley's damages under New York's comparative fault law, N.Y. CPLR § 1411.

CONCLUSION

For the foregoing reasons, Dooley's motions in limine are granted in part and denied in part.

SO ORDERED.

Dated: December 22, 2021
      New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

9